Susan R. FRASIER, Plaintiff,

v.

U.S. DEPARTMENT OF HEALTH AND
HUMAN SERVICES and National En-
dowment for the Arts, Defendants.

No. 90–CV–904.

United States District Court,
N.D. New York.

Nov. 25, 1991.

214

Susan R. Frasier, pro se.

Frederick J. Scullin, Jr., U.S. Atty., Syracuse, N.Y. (William Larkin, Asst. U.S. Atty., of counsel), Elaine Romberg, Asst. U.S. Atty., Civ. Div. Federal Programs Branch, Washington, D.C., for defendants.

## MEMORANDUM–DECISION AND ORDER

McCURN, Chief Judge.

This action arises from plaintiff's inability to secure federal funding from the Department of Health and Human Services ("HHS") and/or the National Endowment for the Arts ("NEA") (collectively, "government") for various projects she has proposed. Currently before the court are five motions, the most substantive of which is the government's motion for summary judgment. For the reasons discussed herein, this court finds that it does not have subject matter jurisdiction over the majority of plaintiff's causes of action. For the remaining claims, plaintiff has failed to state a claim upon which relief can be granted. Hence, plaintiff's complaint is dismissed with prejudice. This ruling obviates the need to rule on the other motions brought before the court.[1]

## I. FACTS

Plaintiff Susan R. Frasier is a resident of Schenectady, New York. She describes herself as a "Vietnam era veteran" who is enrolled in various public assistance programs. Complaint (1st Cause of Action) ¶ 5; Plaintiff's Affidavit in Support of Motion for Separate Trials, at ¶ 2. Due to her unfortunate financial condition, plaintiff is unable to afford legal counsel, and hence is proceeding *pro se. See id.*

Plaintiff was last regularly employed in September, 1988. According to her complaint, "[p]laintiff has been actively seeking work opportunities through government grants and contracting programs since September, 1988, when her regular employment and career was cut short" by the incidents alleged in unrelated litigation pending before Northern District Judge Cholakis. Complaint (1st Cause of Action) ¶ 4. Specifically, in 1989, plaintiff applied to the National Endowment for the Arts for a "Design Advancement Project" grant through the NEA's Design Arts Program. Plaintiff sought NEA financing for her proposed purchase of a $15,000 "computer-assisted design work-station." Complaint (2d Cause of Action) ¶ 2. She satisfied all of the program's procedural requirements, thus allowing her application to be considered in the NEA's selection process.

The plaintiff contends that the NEA selection process was constitutionally and statutorily flawed as applied to her application. In response, the government has outlined, in intricate detail, the process that the NEA regularly employs when considering grant applications such as plaintiff's. *See* Defendant's Memorandum of Law in Support (9/30/91) ("Def. Mem."), at 6–8. In essence, the review process consists of three "rounds" of discussion by a panel of experts in ten different design fields. The panelists spend three days considering all of the applications, culminating in a recommendation for funding for one of the proposed projects. The National Council on Arts reviews the panel's recommendation and refers its findings to the Chairperson

---

1. Since oral argument, plaintiff has filed written objections to the court's decisions (1) not allowing her to finish her oral argument regarding her motion for judgment on the pleadings, and (2) granting the government leave to file reply papers. Plaintiff's objections, even if meritorious, are without consequence. This is because today's decision is not based on plaintiff's motion for judgment on the pleadings, nor did the government's reply papers factor into the decision. In other words, the court had no need to consider the arguments at issue in plaintiff's objections.

of the NEA for review. After these three levels of review, the Chairperson finally decides which application for funding should be granted. *Id.* (citing Declaration of Andrea Clark, ¶¶ 3–8).

With respect to plaintiff's proposed project, the program's panel of experts recommended against funding, and the National Council on Arts agreed. The Chairperson of the NEA ultimately adopted the panel's and Council's decision. By letter dated May 15, 1990, plaintiff was notified that her proposed project had not been selected for program funding. The government avers that plaintiff's application was processed along the ordinary channels; plaintiff has offered no credible evidence to controvert the government's representation.

In January, 1990, while her application for funding was pending before the NEA, plaintiff submitted a separate application to the Department of Health and Human Services, seeking funding for two new and unrelated proposals. The source of the funding was the HHS's Small Business Innovation Research Program ("SBIR Program"), created through the Small Business Innovation Development Act of 1982, 15 U.S.C. § 638(f), (g). The review process for SBIR Program applications is as intricate as that employed by the NEA, following a schedule determined in cooperation with the government's Small Business Association. Def. Mem. at 8–9 (citing 15 U.S.C. § 638(g)(2)). The record is unclear as to the substance of plaintiff's proposal, except that it was submitted by her under the name of her business, "Strictly Hers Consulting." *See* Def. Mem. at 15. Again, the government avers that plaintiff's application was processed pursuant to the agency's established policy, *see* Def. Mem. at 9–11, and once again, in August, 1990, plaintiff's application was rejected outright. *Id.* at 16. This marked the second occasion on which one of plaintiff's proposals was denied federal funding.

Plaintiff was certainly not alone in her inability to obtain federal assistance for her proposed projects. For example, plaintiff's HHS application was one of 146 initially reviewed. Twenty-seven grant proposals were in the same "topic area" as one of plaintiff's proposals, twenty-six were in the same area as plaintiff's other proposal. Def. Mem. at 15–16 (citing Declaration of Janet S. Hartnett, ¶¶ 4–6). Only one proposal was selected for funding in each respective area; therefore, the overwhelming majority of projects were denied funding. *See id.* With respect to plaintiff's allegation that the proceeding was intentionally slanted against her in particular, the court notes that of the twenty-seven proposals submitted in one of her topic areas, plaintiff's was ranked in the top half (13 out of 27). *Id.*

In the midst of her respective application processes, plaintiff discovered that HHS also funds a "Community Services Block Grant Program." Complaint (Third Cause of Action) ¶ 2. Upon further inquiry, plaintiff learned that the program, available through the applicant's state (in this case New York), provided funds only for specialized community action programs. Plaintiff therefore determined that she was ineligible for funding thereunder, and did not apply for funds. Plaintiff now insists that HHS's standards for distributing grants under this program were "inconsistent, invasive, prohibitive, and contrary with the funding specification of the agency, ... without a uniform technique which prevented from [sic.] the end result of discrimination," and were negligently imposed against her. *Id.* ¶ 5.

Plaintiff brought suit in this court in August, 1990, stating three causes of action. In the first, plaintiff contends that HHS's procedure which denied her funding was unconstitutional and illegal, in violation of at least thirty-nine different federal statutes and regulations, two constitutional provisions, and numerous common laws. Complaint (First Cause of Action) ¶ 10. Her second cause of action challenges the results of the NEA procedures as they were applied to her application, on substantially similar grounds. Complaint (Second Cause of Action) ¶ 4 (again, thirty-nine violations alleged). The third cause of action challenges HHS's method for determining Community Services Block Grant Program

awards. Plaintiff seeks total recovery of $233,600.

## II. CURRENT MOTIONS

There are now six motions before the court:

(1) By plaintiff, to amend the pretrial scheduling order and stipulation, pursuant to Fed.R.Civ.P. 16(e);

(2) By plaintiff, to sever the causes of action in her complaint, pursuant to Fed.R.Civ.P. 42(b);

(3) By plaintiff, to amend her complaint, pursuant to Fed.R.Civ.P. 15(a);

(4) By plaintiff, for judgment on the pleadings;

(5) By defendant, to dismiss plaintiff's first and third causes of action for failure to prosecute, pursuant to Fed. R.Civ.P. 41(b);

(6) By defendant, for summary judgment, pursuant to Fed.R.Civ.P. 56(b).

Plaintiff's first three motions are prompted in large part by her impoverished financial status and her poor health, both of which she has taken care to fully delineate for the record. *See, e.g.,* Plaintiff's Affidavit in Support of Motion for Separate Trials, at ¶ 2; Letter of Plaintiff to court (August 1, 1991); Plaintiff's Memorandum of Law in Opposition, *passim.* Plaintiff asserts that, due to her disadvantaged condition, she is able to pursue only one cause of action at a time, beginning with her second cause of action (against NEA). In her own words:

> plaintiff's recent change in financial status below the poverty line has made it impossible to comply with the xerox and postage requirements to process more than one cause of action; [plaintiff's] recent change in impaired physical health has made it impossible to endure the schedule requirements to process more than one cause of action; and plaintiff's continued inability to obtain an attorney have all established a personal hardship

overlooked by the Court [when issuing the scheduling order]....

Plaintiff's Notice of Motion to Amend Pretrial Order, at 2. Plaintiff therefore moves for the court to (1) amend the pretrial stipulation and scheduling order so as to relieve her of the deadlines set forth therein with respect to her first and third causes of action, and (2) sever her second cause of action from the others, so that she can proceed with each separately.

Plaintiff's third motion, to amend her complaint, is brought simply to allow her to make technical modifications, thus ridding the complaint of professed procedural defects. Specifically, plaintiff wishes to add "notices of constitutional claims" to her complaint, presumably to put the government on notice that she is asserting constitutional claims.

The government, in turn, opposes plaintiff's motion to amend the scheduling order, and cross moves for dismissal of the first and third causes of action due to plaintiff's failure to prosecute those claims. The government also moves for summary judgment, arguing (1) that the government has not waived its sovereign immunity with respect to the claims asserted by plaintiff, (2) the court lacks subject-matter jurisdiction, and (3) plaintiff has failed to state a constitutional claim.[2]

## III. DISCUSSION

Before reaching the merits of the current motions, the court must address some preliminary, procedural matters. First, the government seeks summary judgment, and not dismissal of plaintiff's complaint. In so moving, the government invokes lack of subject-matter jurisdiction (due to sovereign immunity) and failure to state a claim upon which relief can be granted as grounds for judgment. The government's motion would be more appropriately brought under Fed.R.Civ.P. 12(b). Indeed, since plaintiff's alleged defects are jurisdictional in nature, this court is *obli-*

---

**2.** The court speculates that plaintiff did not understand the nature of the government's motion to dismiss the constitutional claims for failure to state a claim, which would be more appropri-

ate under Fed.R.Civ.P. 12(b)(6). Plaintiff's misunderstanding may be the basis for her motion to amend her complaint to add "notice" of constitutional claims.

*gated* to convert the government's summary judgment motion to a motion to dismiss plaintiff's complaint pursuant to Fed. R.Civ.P. 12(b)(1) and (6), and to consider the government's arguments accordingly. *See Boudloche v. Conoco Oil Corp.*, 615 F.2d 687, 688–89 (5th Cir.1980); *see also Blum v. Morgan Guaranty Trust Co.*, 709 F.2d 1463, 1466 (11th Cir.1983).

 Second, this court has an obligation to liberally construe plaintiff's *pro se* complaint. *E.g. Hughes v. Rowe*, 449 U.S. 5, 9, 101 S.Ct. 173, 175, 66 L.Ed.2d 163 (1980); *Robles v. Coughlin*, 725 F.2d 12, 15 (2d Cir.1983). *Pro se* litigants cannot be held to the same high standard of pleading as experienced and educated litigators. Finding that it would be patently unfair of the judiciary to slam shut the courthouse doors on a *pro se* plaintiff solely because of her lack of legal experience or knowledge, the Supreme Court and Second Circuit have instructed courts that *pro se* complaints, however obscure, must be held to less stringent standards than formal pleadings drafted by lawyers. *See, e.g., Hughes*, 449 U.S. at 9, 101 S.Ct. at 175; *Robles*, 725 F.2d at 15. Today's decision to dismiss plaintiff's complaint is rendered even in light of the deference afforded to plaintiff's *pro se* status.

Finally, for the reasons stated herein, this court finds that dismissal of plaintiff's complaint is warranted. Hence, consideration of all other motions is obviated; plaintiff's motions, including those returnable on December 5, 1991, are denied as moot.

### A. Sovereign Immunity

#### 1. Background

A common thread running through the government's motion to dismiss is the doctrine of sovereign immunity. As noted above, plaintiff in the present case is proceeding *pro se*, and certainly cannot be assumed to understand, let alone properly plead, the intricacies of sovereign immunity. To be sure, plaintiff has expressed her frustration with "the dismissal of cases from the judiciary on the basis of frivolous,

petty and trivial failures of *pro se* litigants to deliver the smallest amount of document detail in due process with complete disregard for … [the] merits of the disadvantaged plaintiff's case and evidence.…" Plaintiff's Notice of Claim of Unconstitutionally—Second Cause of Action # 3, at 3–A. Given the plaintiff's understandable disillusionment, the court feels compelled to take a moment to outline the doctrine of sovereign immunity.

 It is axiomatic that " '[t]he United States, as a sovereign, is immune from suit [unless] it consents to be sued.…' " *United States v. Mitchell*, 445 U.S. 535, 538, 100 S.Ct. 1349, 1351, 63 L.Ed.2d 607 (1980) (quoting *United States v. Sherwood*, 312 U.S. 584, 586, 61 S.Ct. 767, 769, 85 L.Ed. 1058 (1941)). Congress can statutorily waive the government's immunity outright, or condition the waiver upon satisfaction of a prerequisite. If Congress waives the government's immunity subject to conditions, then this court is strictly bound to adhere to the conditions of the waiver. *Id.; United States v. Kubrick*, 444 U.S. 111, 118–19, 100 S.Ct. 352, 357–58, 62 L.Ed.2d 259 (1979). In other words, this court cannot artificially construct a waiver of immunity by ignoring the limitations set forth by Congress. *Block v. North Dakota*, 461 U.S. 273, 287, 103 S.Ct. 1811, 1819, 75 L.Ed.2d 840 (1983); *Mitchell*, 445 U.S. at 538, 100 S.Ct. at 1351 (citing *United States v. King*, 395 U.S. 1, 4, 89 S.Ct. 1501, 1502, 23 L.Ed.2d 52 (1969)). The Supreme Court most succinctly stated this principle in *Block:*

> The basic rule of federal sovereign immunity is that the United States cannot be sued at all without the consent of Congress. A necessary corollary of this rule is that when Congress attaches conditions to legislation waiving the sovereign immunity of the United States, those conditions must be strictly observed, and exceptions thereto are not to be lightly imposed.

461 U.S. at 287, 103 S.Ct. at 1819–20 (citations omitted).[3]

---

**3.** Plaintiff urges the court to reject "the flowery case law citations and arguments [relating to]

jurisdiction [submitted by] the defense," because the case law is contrary to the federal

With respect to the plaintiff's case, the court is able to find only three possible instances in which Congress waived the United States's sovereign immunity for the allegations set forth in plaintiff's complaint:

1. Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2675 (1988 & West Supp. 1991);

2. Administrative Procedure Act ("APA"), 5 U.S.C. § 702 (1988); and

3. 42 U.S.C. § 1983 (1988).

In each instance Congress has attached stringent conditions to its waiver of immunity. The court will discuss each of these provisions as they apply to plaintiff's case, *seriatim.*

## 2. Federal Tort Claims Act

■ In liberally construing plaintiff's complaint, the court can discern causes of action under the FTCA. Specifically, plaintiff alleges in all three causes of action that HHS and NEA standards for processing funding applications were "so negligent and irresponsible in the bidding guidelines as to wrongfully inflict civil injury on the plaintiff...." Complaint at p. 6 ¶ 10; p. 11 ¶ 5; and p. 15 ¶ 5. Since the FTCA is the exclusive avenue for remedy by parties alleging federal governmental torts, plaintiff must rely on the express provisions therein if she hopes to pursue these tort actions. *See* 28 U.S.C. § 2678 (West Supp. 1991).

The FTCA sets forth several prerequisites to suits brought thereunder against the United States. Most significantly (for purposes of this case), the FTCA mandates that plaintiffs exhaust administrative remedies with the appropriate governmental agency before filing a lawsuit against the United States.

An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail.

28 U.S.C. § 2675(a). The FTCA's administrative exhaustion rule is a jurisdictional requirement which simply cannot be waived. *Keene Corp. v. United States,* 700 F.2d 836, 841 (2d Cir.), *cert. denied,* 464 U.S. 864, 104 S.Ct. 195, 78 L.Ed.2d 171 (1983).

Plaintiff here has not satisfied the FTCA's administrative exhaustion prerequisite for filing suit against the United States. Indeed, as the government properly observed, plaintiff conceded her failure in a January 28, 1991 letter to the court, in which she insisted that due to her "extreme hardship and exceptional circumstance, and the fact that so many agencies were included within the breach of statutory duty allegation, it was not practical in this case to expect me to perform an administrative complaint filing with each and every department cited." Letter from Susan Frasier to Court (Jan. 28, 1991).

This court does not doubt that plaintiff has endured hardship and circumstance. Plaintiff's failure to exhaust the administrative avenues for redress nonetheless defies the conditions set forth by Congress when it waived its sovereign immunity for tort suits. Plaintiff's argument that she is excused from the administrative exhaustion requirement in that she brought this suit under an exempt section of the FTCA is without merit. The exhaustion requirement applies to the entire FTCA, *i.e.* all suits brought thereunder, and not just to actions brought under select provisions. *See* § 2675(a) ("an action shall not be instituted ..."; no differentiation between sections).

In the past, the Second Circuit has mandated that courts dismiss FTCA cases similar to the present. *Adams v. United*

---

forms services, "which [are] written by professors of law...." While viewing the members of our academic community in high esteem, the court is not convinced that their binding authority extends beyond the classroom.

*States,* 807 F.2d 318, 320 (2d Cir.1986); *Keene Corp.,* 700 F.2d at 841; *see also O'Rouke v. Eastern Air Lines, Inc.,* 730 F.2d 842, 855 (2d Cir.1984). Even considering plaintiff's obstacles, the doctrine of sovereign immunity prohibits this court from adjudicating over plaintiff's tort claims. This court, in short, may not "take it upon [itself] to extend a waiver beyond that which Congress intended." *Kubrick,* 444 U.S. at 118–19, 100 S.Ct. at 357–58. Accordingly, plaintiff's failure to satisfy the FTCA's administrative exhaustion before filing this suit requires this court to dismiss any claims that plaintiff might have under the FTCA.

### 3. Administrative Procedure Act

■ Plaintiff alleges in large part that she was denied federal funding due to HHS's and NEA's improper decision making and faulty procedures. Plaintiff specifically asserts that

> the methods and procedure used by the [respective agencies] in the processing of her contract application was arbitrary and without educated legal rationale or basis, was laced with deceptive business practices including manufactured or falsified documents in the handling of contract bidding information, was inconsistent with the funding specification of the agency, was without uniform technique that prevented from the end result of discrimination....

Complaint at p. 6 ¶ 10; p. 11 ¶ 5; p. 15 ¶ 5.

Through the APA, Congress waived the government's immunity from judicial review when sought by "a person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute...." 5 U.S.C. § 702; *Webster v. Doe,* 486 U.S. 592, 108 S.Ct. 2047, 2051, 100 L.Ed.2d 632 (1988). Since plaintiff alleges that she was aggrieved by the defendant agencies' actions, the APA provides the appropriate avenue for redress. *See* 5 U.S.C. §§ 702, 704. As under the FTCA, however, Congress's waiver of sovereign immunity for actions brought under the APA is conditioned. Congress explicitly retained immunity with respect to agency actions that are committed to agency discretion. 5 U.S.C. § 701(a)(2). The applicable statute states:

> This chapter [allowing judicial review] applies, according to the provisions thereof, except to the extent that—
>
> . . . . .
>
> (2) agency action is committed to agency discretion by law.

*Id.*

An agency action "is committed to agency discretion by law" when the agency's enabling statute provides no standard for the agency to follow when awarding funds. To that end, judicial review "is not to be had if the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion." *Heckler v. Chaney,* 470 U.S. 821, 830, 105 S.Ct. 1649, 1655, 84 L.Ed.2d 714 (1985); *accord Webster,* 108 S.Ct. at 2052. *But see Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 410, 91 S.Ct. 814, 820, 28 L.Ed.2d 136 (1971) ("rare" instances in which there is no law to apply).[4] Congress retained immunity for those actions committed to agency discretion because, in large part, agency decision-making often involves "a complicated balancing of a number of factors which are peculiarly within [the

---

**4.** The absence of a reviewable standard is not the only instance in which a court must refrain from adjudicating over an agency action under § 701(a)(2). In *Webster,* Justice Scalia noted, albeit in dissent, that

> [the Supreme Court has] continued to take into account for purposes of determining reviewability, post-APA as before, not only the text and structure of the statute under which the agency acts, but such factors as whether the decision involves a 'sensitive and inherently discretionary judgment call,' *Department of*

*Navy v. Egan* [484 U.S. 518], 108 S.Ct. 818, 824 [98 L.Ed.2d 918] (1988), whether it is the sort of decision that has traditionally been non-reviewable, *ICC v. Locomotive Engineers* [482 U.S. 270], 107 S.Ct. 2360, 2367 [96 L.Ed.2d 222] (1987); *Chaney,* 470 U.S. at 832 [105 S.Ct. at 1656], and whether review would have 'disruptive practical consequences,' see *Southern R. Co. v. Seaboard Allied Milling Corp.,* 442 U.S. 444, 457 [99 S.Ct. 2388, 2395, 60 L.Ed.2d 1017] (1979).

*Webster,* 108 S.Ct. at 2057 (Scalia, J., dissenting).

agency's] expertise." *Chaney,* 470 U.S. at 831, 105 S.Ct. at 1655. As the Third Circuit noted, "it would appear unseemly in such circumstances for a court to substitute its judgment for that of an executive or agency official." *Local 2855, AFGE (AFL-CIO) v. United States,* 602 F.2d 574, 579 (3d Cir.1979).

In the present case, this court must examine the enabling statutes of both the NEA and HHS programs under which plaintiff applied for funding, to determine whether the agency determinations made pursuant thereto are "committed to the agenc[ies'] discretion," *see* § 701(a)(2), and thus beyond the reach of this court's power to review.

### a. Discretion under the NEA

The enabling legislation for NEA funding is found at 20 U.S.C. § 954 (1988 & West Supp.1991) ("National Endowment for the Arts"). That section, governing the program of contracts, grants-in-aid, and loans to groups and individuals for projects and productions, is replete with language indicating Congress's intent to delegate vast discretion to the Chairperson of the NEA in awarding grants. *See id.* The guidelines which the Chairperson must consider when awarding funds are so broad and standardless that this court has no basis for reviewing the Chairperson's actions for compliance.

Section 954(d) requires that the Chairperson to review applications for funds in accordance with established regulations. Significantly, *the Chairperson* has the duty to promulgate those regulations. The only conceivable guidance provided by the statute concerning standards the Chairperson must follow states:

In establishing such regulations and procedures, the Chairperson shall ensure that—

(1) artistic excellence and artistic merit are the criteria by which applications are judged, taking into consideration general standards of decency and respect for the diverse beliefs and values of the American public; and

(2) applications are consistent with the purposes of this section. Such regulations and procedures shall clearly indicate that obscenity is without artistic merit, is not protected speech, and shall not be funded. Projects, productions, workshops, and programs that are determined to be obscene are prohibited from receiving financial assistance under this subchapter from the National Endowment for the Arts.

20 U.S.C. § 954(d) (West Supp.1991).

Even in imposing these requirements, Congress left mostly to the discretion of the Chairperson the determination of what constitutes "art excellence," "artistic merit," and "general standards of decency." *See id.* (except for obscene materials, which are not at issue in this case). The statute, as drawn in this manner, leaves the court with "no meaningful standard against which to judge the agency's exercise of discretion." *Chaney,* 470 U.S. at 830, 105 S.Ct. at 1655; *Webster,* 108 S.Ct. at 2052. This court cannot—and will not—second-guess the NEA's conclusions concerning "art excellence" and "artistic merit"; such judgments are clearly left to the agency's discretion and therefore are not reviewable.

Of course, the statute lists some criteria that the agency must *consider* when considering applications, *see* § 954(c), but that alone does not remove the agency's discretion for § 701(a)(2) purposes. *Strickland v. Morton,* 519 F.2d 467, 469 (9th Cir.1975). In any event, as the government has correctly observed, any restraint on the agency's discretion serves to limit the works that NEA *may* fund; the statute is flatly devoid of any criterion affecting the agency's authority to refuse funding. *See* Def. Mem. at 30.

Plaintiff has suggested no viable grounds under which this court has authority to review the NEA's decision to refuse her funding. Since Congress drafted §§ 954(c) and (d) "in such broad terms that there is no law to apply," *Volpe,* 401 U.S. at 410, 91 S.Ct. at 821 (quoting S.Rep. No. 752, 79th Cong., 1st Sess. 26 (1945)), this court is without authority to review the NEA decisions in this case. Hence, this

court must dismiss plaintiff's second cause of action as brought under the APA, for lack of subject-matter jurisdiction.

The court notes that plaintiff has produced not a shred of credible evidence to support her insinuation that the NEA process was specifically and improperly applied to defeat her application; thus, she would be unable to withstand the government's motion for summary judgment, as well. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) ("a party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial.'"); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–26, 106 S.Ct. 2548, 2552–54, 91 L.Ed.2d 265 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

### b. Discretion under the Small Business Innovation Development Act

■ The court reaches the same conclusion with respect to plaintiff's unsuccessful application for HHS funding. The statute under which plaintiff sought funding, the Small Business Innovation Development Act, is also couched in terms which require this court to refrain from reviewing HHS's decisions rendered thereunder.

The government informs that court, and plaintiff does not contend otherwise, that the enabling statute is codified at 15 U.S.C. § 638 (1988 & West Supp.1991) ("Research and development"). That statute states generally that the administering agency is actually the Small Business Administration, and that "it shall be the duty of the Administration, and it shall be empowered," to assist small-business concerns in various ventures. § 638(b) (West Supp.1991). Without spelling out a line-by-line analysis of the statute in question, the court finds that the only mention therein of criteria which an agency must follow in awarding funds appears in § 638(b). Section 638(b) limits funding to projects serving certain purposes, but the purposes are stated in terms so amorphous and subjective that

this court is obliged to refrain from reviewing agency decisions rendered thereunder. In other words, even with § 638(b), the Administration still has considerable license to award or deny funding requests. The court can discern no further standards in the statute which would guide the court in determining whether the purposes are satisfied. *See generally* § 638. Plaintiff has once again suggested no authority indicating that this court is in a position to substitute its judgment for that of the agency awarding funds. Since "review is not to be had if the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion," *Chaney*, 470 U.S. at 830, 105 S.Ct. at 1655, and the Act implicated by the plaintiff simply gives the court no meaningful standard against which to so adjudicate, this court cannot review HHS's exercise of discretion in this case. 5 U.S.C. § 701(a)(2). For the court to ignore Congress's "agency discretion" condition to its waiver of sovereign immunity under the APA would constitute an unconstitutional infringement on the federal government's right to be free from suit. *See, e.g., Mitchell*, 445 U.S. at 538, 100 S.Ct. at 1351 (quoting *Sherwood*, 312 U.S. at 586, 61 S.Ct. at 769).

### B. Constitutional Claims

Plaintiff next alleges that the NEA and HHS selection procedures violated her guarantee of due process under the fourteenth amendment of the United States Constitution. In response, the government properly notes that invocation of the fourteenth amendment is limited to actions against *state* government, and therefore plaintiff's claims against these federal agencies are not cognizable thereunder. The government then asserts that "plaintiff's constitutional claims against defendants may be brought, if at all, under the fifth amendment." Def. Mem. at 37. This court finds that even if plaintiff could sue the federal government directly under the fifth amendment—a point which is less than entirely clear—her suit should nonetheless be dismissed for failure to state a claim upon which relief can be granted.

■ A claim of deprivation of due process cannot stand unless plaintiff possesses

a right, or interest, which is entitled to due process protection in the first place. *E.g., Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 459, 109 S.Ct. 1904, 1907, 104 L.Ed.2d 506 (1989); *Connecticut Bd. of Pardons v. Dumschat*, 452 U.S. 458, 463, 101 S.Ct. 2460, 2463, 69 L.Ed.2d 158 (1981). Although she alleges many different acts which injured her, *e.g.* only people with fancy addresses received grants, all of her claims here stem from a common legal event, *to wit* the agencies' refusal to provide funding for her projects. Hence, the only possible interest this court can discern from plaintiff's complaint is her professed interest in receiving federal funding for her proposed projects.

Plaintiff's desire for funding, without more, does not rise to the level of a constitutionally protected interest. This is because,

> [t]o have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.

*Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). *See also Kelly Kare, Ltd. v. O'Rourke*, 930 F.2d 170, 175 (2d Cir.), *cert. denied*, — U.S. ——, 112 S.Ct. 300, 116 L.Ed.2d 224 (1991). Determination of whether plaintiff has a "legitimate claim of entitlement" to NEA and/or HHS funding depends upon whether such an entitlement is affirmatively created by law, rule, or other source independent of the due process clause. *Roth*, 408 U.S. at 577, 92 S.Ct. at 2709; *R.R. Village Ass'n v. Denver Sewer Corp.*, 826 F.2d 1197, 1201 (2d Cir.1987). This court must therefore once again examine the laws implicated in the present case, *i.e.* the NEA and the Small Business Innovation Development Act, to determine whether either creates in the plaintiff an entitlement to funds granted thereunder.

As discussed extensively above, both programs are operated at the discretion of the respective agencies. *See* discussion of NEA discretion, *supra* p. 220; HHS discretion, *supra* p. 221. The existence of agency discretion thwarts plaintiff's claim of an entitlement cognizable under the due process clause because, as the Second Circuit recently recognized, when a statute vests discretion in the government over the continued conferral of a benefit, "it will be the rare case that the recipient will be able to establish an entitlement to the benefit." *Kelly Kare*, 930 F.2d at 175 (citing, *e.g., Plaza Health Laboratories, Inc. v. Perales*, 878 F.2d 577, 581 (2d Cir.1989)). To that end, when an agency such as NEA or HHS is delegated such latitude to determine its course of action, an individual cannot rationally argue that she holds a constitutional right to compel the agency to act in a specific manner. *See Dumschat*, 452 U.S. at 466, 101 S.Ct. at 2465; *see also Advocates for the Arts v. Thomson*, 532 F.2d 792, 797 (1st Cir.), *cert. denied*, 429 U.S. 894, 97 S.Ct. 254, 50 L.Ed.2d 177 (1976) (no entitlement to funds for arts).

In light of the broad discretion afforded to NEA and HHS under their respective enabling acts, this court is not prepared to hold that plaintiff is constitutionally entitled to have either agency fund her projects. Hence, plaintiff has failed to state a cognizable interest which would entitle her to due process protection. The court reiterates that plaintiff's case is devoid of a single, credible piece of evidence suggesting that the procedures employed by the agencies in considering her applications were anything short of ordinary and constitutional.[5] Accordingly, the court dismisses plaintiff's complaint to the extent that it entails claims of deprivation of a right to due process.

Plaintiff has boldly asserted that the defendant agencies' actions also violated her rights secured under the equal protection clause. Plaintiff has provided no cogent argument to support that claim. Even upon reviewing her complaint with deference to her *pro se* status, this court cannot fathom how plaintiff could prevail on such an argument. Plaintiff's equal protection claims are therefore dismissed.

---

**5.** Of course, plaintiff is not even entitled to proper procedures under the fifth amendment, because she has asserted no interest that is entitled to fifth amendment protection. *E.g. Roth*, 408 U.S. at 577, 92 S.Ct. at 2709.

### C. Plaintiff's Third Cause of Action

█ Plaintiff alleges in her third cause of action that she did not apply for funding under HHS's Community Grant Program because the standards for distributing grants thereunder were "inconsistent, invasive, prohibitive, and contrary [to] the funding specification of the agency, ... without a uniform technique which prevented from the end result of discrimination," and were negligently imposed against her. Complaint ¶ 5. In attesting that she never applied for funds under the program, however, plaintiff dealt a fatal blow to her cause of action. This is because a person cannot bring suit solely on the grounds that she disagrees with a statute or a regulation enacted thereunder. A plaintiff must be personally and adversely affected by an alleged event in order to have standing to bring a lawsuit in federal court. *E.g. Sierra Club v. Morton,* 405 U.S. 727, 740, 92 S.Ct. 1361, 1368, 31 L.Ed.2d 636 (1972).

Because plaintiff's lack of standing marks such an elementary principle of constitutional law, this court will not belabor discussion of this issue. Since plaintiff never applied for funding under the program, and therefore has not been denied funding thereunder, she has not yet *personally* suffered an injury which this court can redress. Hence, plaintiff has no standing to pursue her third cause of action. The cases cited by the government are completely dispositive of this point. *See* Def. Mem. at 47–78 (citing *Valley Forge Christian College v. Americans United for Separation of Church and State,* 454 U.S. 464, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982); *Warth v. Seldin,* 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975); *Sierra Club,* 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972); *Jenkins v. McKeithen,* 395 U.S. 411, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969)). Plaintiff's third cause of action is dismissed for want of standing.

### IV. CONCLUSION

Congress has not waived the federal government's sovereign immunity from suits such as that brought by plaintiff in her first two causes of action. Hence, this court does not have jurisdiction to adjudicate over plaintiff's first two causes of action. To the extent that plaintiff has alleged constitutional deprivations therein, she has failed to state a claim upon which relief can be granted. Accordingly, plaintiff's causes of action numbered one and two are dismissed with prejudice.

Plaintiff does not have standing to assert her third cause of action. It, too, is therefore dismissed with prejudice.

Today's ruling obviates the need to address the remaining motions before the court. This includes plaintiff's motions which are scheduled for oral argument on December 4, 1991. Plaintiff's remaining motions, including those set for December 4, are dismissed as moot.