Arnold H. SLYPER, Appellant,

v.

ATTORNEY GENERAL.

Marco BAQUERO, Appellant,

v.

ATTORNEY GENERAL, et al.

Nos. 86–5331, 86–5335.

United States Court of Appeals, District of Columbia Circuit.

Argued Feb. 2, 1987.

Decided Sept. 4, 1987.

Charles Gordon, Washington, D.C., for appellants.

Joseph A. Blundon, Asst. Gen. Counsel, U.S. Information Agency, of the bar of the District of Columbia Court of Appeals, pro hac vice, by special leave of court, Washington, D.C., with whom Richard K. Willard, Asst. Atty. Gen., and Donald A. Couvillon, Attorney, U.S. Dept. of Justice, and C. Normand Poirier, Acting General Counsel, U.S. Information Agency, were on the brief, for appellees. Joseph E. diGenova, U.S. Atty., and Royce C. Lamberth, R. Craig Lawrence, and Diane M. Sullivan, Asst. U.S. Attys., also entered appearances for appellees.

Before RUTH BADER GINSBURG, BUCKLEY, and D.H. GINSBURG, Circuit Judges.

Opinion for the court filed by Circuit Judge BUCKLEY.

BUCKLEY, Circuit Judge:

The question before us in these consolidated cases is a narrow one; namely, whether a district court has jurisdiction to review a decision by the United States Information Agency not to recommend that two foreign doctors receiving training in the United States be granted a waiver of a statutory requirement that they return to their countries of origin for two years before being allowed to apply for foreign residency status in the United States. We affirm the district court's conclusion that it has no jurisdiction to hear the cases because there is no law for the court to apply.

## I. BACKGROUND

These cases involve foreign medical graduate students who are in the United States under the auspices of the Exchange Visitor Program authorized by the United States Information Agency ("USIA"). 22 U.S.C. § 2452 (1982). Each student has married a United States citizen and seeks permanent resident status in this country through the waiver of a statutory requirement that he first return to his country of origin. Appellants claim that such a return will impose extraordinary hardship on their wives. These cases are governed by 8 U.S.C. § 1182(e) (1982), which requires, as one of the conditions for the grant of a waiver, that it be favorably recommended by the Director of the USIA.

In the first case, the USIA denied appellant Slyper's request for a favorable recommendation because "[i]t is considered that what hardship may exist does not outweigh the program and policy considerations of the Exchange Visitor Program or the Congressional intent of Public Law 94-484." Denial of Waiver Request (May 21, 1984) (Joint Appendix ("J.A.") at 16). This denial was subsequently reaffirmed without further elaboration in two letters from USIA's General Counsel to Slyper's attorney. Letters from Richard Fruchterman to Charles Gordon (Sept. 4 and 10, 1984) (J.A. at 22 and 23).

Slyper brought suit alleging that the USIA's refusal to make a favorable recommendation was "arbitrary, unreasonable, and an abuse of discretion." Amended Complaint for Slyper Para. 22 (J.A. at 12). The district court dismissed the action because the statute vested the USIA with so

"broad and vague" a mandate that it had "no law to apply." *Slyper v. Attorney General,* No. 82–3048, Memorandum Order at 4–5 (D.D.C. Mar. 26, 1986) (quoting *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 410, 91 S.Ct. 814, 820-21, 28 L.Ed.2d 136 (1971)).

The district court dismissed appellant Baquero's complaint for the same reason. "The Court can find no significant factual difference in this case which might distinguish it from *Slyper* or otherwise provide this Court with jurisdiction in spite of the *Overton Park* doctrine." *Baquero v. Attorney General,* No. 86–0692, Memorandum Order at 3 (D.D.C. Mar. 27, 1986).

## II. Discussion

### A. *The Statute and the Regulation*

The Immigration and Nationality Act, as amended, provides in pertinent part:

No person ... [who] came to the United States ... in order to receive graduate medical education or training, shall be eligible to apply for an immigrant visa, or for permanent residence, or for a non-immigrant visa ... until it is established that such person has resided and been physically present in the country of his nationality or his last residence for an aggregate of at least two years following departure from the United States: *Provided,* That

■ upon the favorable recommendation of the Director of the United States Information Agency,

■ pursuant to the request of ... the Commissioner of Immigration and Naturalization after he has determined that departure from the United States would impose exceptional hardship upon the alien's spouse or child (if such spouse or child is a citizen of the United States or a lawfully resident alien), ...

■ the Attorney General may waive the requirement of such two-year foreign residence abroad....

8 U.S.C. § 1182(e) (1982).

Our task is to decide whether the district court had subject matter jurisdiction to review the USIA Director's failure to make a favorable recommendation. The Immigration and Naturalization Commissioner's determination of exceptional hardship is not at issue, nor is the Attorney General's discretion to waive the repatriation requirement.

The USIA regulations repeat practically verbatim the waiver procedure in the statute, *see* 22 C.F.R. § 514.31 (1986), and provide the most general type of guidance for USIA action on receipt of a waiver request:

Upon receipt of a request for a recommendation of waiver of the two-year home country physical presence requirement ..., the Director will review the policy, program, and foreign relations aspects of the case and will transmit a recommendation to the Attorney General for decision.

22 C.F.R. § 514.32 (1986) (current version at 22 C.F.R. § 514.32 (1987)).

### B. *No Law to Apply*

Citing *Overton Park,* 401 U.S. at 410, 91 S.Ct. at 821, the district court concluded that the Director's statutory discretion was so broad that there is "no law to apply" and hence review is precluded by the Administrative Procedure Act ("APA"), 5 U.S.C. § 701(a)(2). *Slyper,* Memorandum Order at 4. The APA precludes a finding of reviewability based on its general reviewability provisions when "agency action is committed to agency discretion by law." 5 U.S.C. § 701(a)(2) (1982).

It is clear from the face of the statute that Congress intended to vest maximum discretion in the Director to oppose waivers requested by visiting physicians. The statute contains no standard or criterion upon which the Director is to base a decision to make or withhold a favorable recommendation. This broad delegation of discretionary authority is "clear and convincing evidence" of congressional intent to restrict judicial review in cases such as those we now face. *See Abbott Laboratories v. Gardner,* 387 U.S. 136, 141, 87 S.Ct. 1507, 1511, 18 L.Ed.2d 681 (1967) ("[O]nly upon a showing of 'clear and convincing evidence' of a contrary legislative intent should the courts restrict access to judicial review.").

This is not to say, nor does appellee contend, that the decisions of the USIA are never subject to review. The agency acknowledges that it is subject to review "[i]f a colorable claim were made of constitutional, statutory, or regulatory violation, or of fraud or lack of jurisdiction on the part of USIA." Brief for Appellee at 15. Neither appellant, however, has made any such claim. Appellants merely assert that the USIA Director abused his discretion. Therefore, our holding that the district court lacked subject matter jurisdiction is limited to the issue of its jurisdiction to review the two USIA decisions for abuse of discretion.

This position is consistent with our recent decision in *Abourezk v. Reagan*, 785 F.2d 1043 (D.C.Cir.), *cert. granted,* —— U.S. ——, 107 S.Ct. 666, 93 L.Ed.2d 718 (1986). *Abourezk* involved the denial of visas to certain foreigners who had been invited by U.S. citizens "to engage in open discourse with them within the United States." *Id.* at 1051. The State Department denied the visas under authority of the Immigration and Nationality Act of 1952 on the grounds that the applicants were "seek[ing] to enter the United States solely, principally, or incidentally to engage in activities which would be prejudicial to the public interest, or endanger the welfare, safety, or security of the United States." 8 U.S.C. § 1182(a)(27) (1982). We held that the APA provided the plaintiffs "a right of review extending to the statutory as well as the constitutional propriety of the State Department's application of section 1182(a)(27) to exclude the aliens invited by plaintiffs to the United States as speakers and meeting participants." *Id.*

What distinguishes *Abourezk* from this case is that the statute invoked by the State Department provided explicit guidelines for its exercise of discretion: "the statute lists thirty-three distinctly delineated categories that conspicuously provide standards to guide the Executive in its exercise of the exclusion power." *Abourezk,* 785 F.2d at 1051, *citing* 8 U.S.C. § 1182(a) (1982). By way of contrast, in the case before us the governing statute is devoid of guidance. Insofar as the Director is subject to any direction, it is to be found in the USIA regulation requiring that he review waiver applications in light of unspecified "policy, program, and foreign relations aspects of the case." 22 C.F.R. § 514.32 (1986). In short, we are presented with a classic case of a statute that "is drawn so that the court would have no meaningful standard against which to judge the agency's exercise of discretion," *Heckler v. Chaney,* 470 U.S. 821, 105 S.Ct. 1649, 1655, 84 L.Ed.2d 714 (1985). As the regulation is equally devoid of meaningful direction, the court has no standard against which to assess the Director's exercise of discretion. *Accord Dina v. Attorney General,* 793 F.2d 473, 476 (2d Cir.1986); *Abdelhamid v. Ilchert,* 774 F.2d 1447, 1449–50 (9th Cir.1985). *Contra Chee-Chung Chong v. United States Information Agency,* 821 F.2d 171 (3d Cir.1987). Accordingly, we hold that the district court correctly invoked the narrow exception provided in the APA for "agency action ... committed to agency discretion by law."

## III. CONCLUSION

The decisions sought to be overturned were committed by statute to the discretion of the USIA Director. As there is no law to apply in either case, the decisions of the district court to dismiss for lack of subject matter jurisdiction are

*Affirmed.*