Antoinette C. **KORVAH**; David Korvah, Plaintiffs–Appellants,

v.

Robert **BROWN**, District Director, Immigration and Naturalization Service; Emily Sweeney, United States Attorney; Russel Ezolt, District Counsel; Janet Reno, Attorney General, Defendants–Appellees.

No. 94–3638.

United States Court of Appeals, Sixth Circuit.

Argued Sept. 14, 1995.

Decided Oct. 3, 1995.

Barbara A. Firstenberg (argued and briefed), Shaker Heights, OH, for plaintiffs-appellants.

Michael Anne Johnson, Asst. U.S. Attorney (argued and briefed), Cleveland, OH, for defendants-appellees.

Before: MILBURN, GUY, and SUHRHEINRICH, Circuit Judges.

RALPH B. GUY, Jr., Circuit Judge.

The issue presented in this appeal is whether a federal district court has jurisdiction to review a denial by the Immigration

and Naturalization Service (INS) of a request for a waiver of the two-year foreign residency requirement imposed upon alien foreign exchange visitors. We conclude, as have several other circuits, that jurisdiction does not exist.

## I.

On July 18, 1989, plaintiff, Antoinette Korvah, entered the United States as a nonimmigrant alien exchange visitor. Entry was pursuant to a J–1 visa issued under 8 U.S.C. § 1101(a)(15)(J) and was for the purpose of participating in a one-year public health program at Tulane University sponsored by the United States Information Agency (USIA).

Such programs have existed since 1948 and were created to promote better international relationships. Part of the underlying rationale for such programs was that the knowledge and skills acquired in the United States would be used to good advantage in the alien exchange student's country of origin.[1] To that end, 8 U.S.C. § 1182(e) requires that upon completing her training, the alien exchange student is required to return to her country of origin for at least two years. It has always been clear that this program has a very specific purpose and is not a general immigration program. Nonetheless, § 1182(e) does provide for a waiver of the two-year foreign residency requirement under certain limited circumstances:

Provided, That upon the favorable recommendation of the Director of the United States Information Agency, pursuant to the request of an interested United States Government agency, (or, in the case of an alien described in clause (iii), pursuant to the request of a State Department of Public Health, or its equivalent) or of the Commissioner of Immigration and Naturalization after he has determined that departure from the United States would impose exceptional hardship upon the alien's spouse or child (if such spouse or child is a citizen of the United States or a lawfully resident alien), or that the alien cannot return to the country of his nationality or last residence because he would be subject to persecution on account of race, religion, or political opinion, the Attorney General may waive the requirement of such two-year foreign residence abroad in the case of any alien whose admission to the United States is found by the Attorney General to be in the public interest except that in the case of a waiver requested by a State Department of Public Health, or its equivalent the waiver shall be subject to the requirements of section 1184(k) of this title: And provided further, That, except in the case of an alien described in clause (iii), the Attorney General may, upon the favorable recommendation of the Director, waive such two-year foreign residence requirement in any case in which the foreign country of the alien's nationality or last residence has furnished the Director a statement in writing that it has no objection to such waiver in the case of such alien.

Korvah completed the Tulane public health program on August 11, 1990,[2] and on June 25, 1992, filed an application for waiver of the two-year foreign residence requirement. The claimed basis for seeking a waiver was that Korvah had secured a "no objection" letter from the Liberian government. The USIA, in a letter sent to INS on November 12, 1992, "determined that the waiver should be denied and that she should return to Liberia, thereby fulfilling the purpose and intent of the Mutual Educational and Cultural Exchange Act." Accordingly, INS denied the waiver request.

---

1. The cost of attendance at the Tulane program was paid for by the USIA.

2. On June 22, 1990, David Korvah, co-plaintiff, entered the United States as a nonimmigrant visitor for pleasure, with permission to remain until December 22, 1990. On August 8, 1990, David Korvah applied for asylum and withholding of departure. It is not clear from the record whether Antoinette and David knew each other at this point in time, but we are informed they were married on July 20, 1994. David Korvah's request for asylum has not been resolved to date but it was denied at the first administrative level. Although David Korvah's status as a plaintiff in this action is less than clear, if it exists at all it is derivative of Antoinette's status, and, since we afford no relief on her claim, it is unnecessary to further pursue the status of her husband.

On February 26, 1993, Korvah filed a second request for waiver, this time claiming a fear of persecution if she returned to Liberia. This request was routed to the Bureau of Human Rights and Humanitarian Affairs of the State Department. The Bureau determined that, even assuming the facts provided by Korvah to be true, "it is the Department's opinion that the applicant would not be persecuted on account of race, religion, or political opinion upon return to Liberia." Based upon this determination, USIA recommended against waiver. On November 19, 1993, INS informed Korvah that her waiver request had been denied.

This litigation was then instituted on February 3, 1994.

## II.

■ Plaintiff's jurisdictional claim is predicated upon the Administrative Procedure Act (APA), 5 U.S.C. § 551 *et seq.* There is no dispute that both INS and USIA are administrative agencies as defined by the APA.[3] One of the purposes of the APA is to subject an agency's actions to judicial review if the action is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A). There are two exceptions to the judicial review provisions, however. In 5 U.S.C. § 701(a)(1) and (2), Congress provided:

(a) This chapter applies, according to the provisions thereof, except to the extent that—

(1) statutes preclude judicial review; or

(2) agency action is committed to agency discretion by law.

Since the statute at issue here does not "preclude judicial review," our inquiry is limited to determining if the provisions of § 701(a)(2) are applicable. Our inquiry is informed by the analysis of this section made by the Supreme Court in *Heckler v. Chaney,* 470 U.S. 821, 830, 105 S.Ct. 1649, 1655, 84 L.Ed.2d 714 (1985):

[E]ven where Congress has not affirmatively precluded review, review is not to be had if the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion. In such a case, the statute ("law") can be taken to have "committed" the decisionmaking to the agency's judgment absolutely. This construction avoids conflict with the "abuse of discretion" standard of review of § 706—if no judicially manageable standards are available for judging how and when an agency should exercise its discretion, then it is impossible to evaluate agency action for "abuse of discretion."

In *Heckler,* the issue was the refusal of the Food and Drug Administration to take certain requested enforcement action. Rather than holding this refusal to act unreviewable, as Justice Marshall points out in his concurrence, the Supreme Court could have simply found no abuse of discretion because such broad latitude was inherent in the making of the decision to decline enforcement. *Id.* at 840–41, 105 S.Ct. at 1660–61.

We conclude, as did the district judge, that in the circumstances presented here, we have no meaningful standard against which to judge the agency's exercise of its discretion. In Korvah's first petition for waiver, she relied solely on the fact that Liberia had no objection to her remaining in the United States. Although the failure to get a "no objection" letter might be fatal to a waiver application, the receipt of such a letter is not controlling. As the USIA points out in its letter recommending denial of waiver, Korvah came to the United States at USIA expense with the express promise she would return home for two years after completion of the program. At the very core of the program is the requirement to return home so that newly learned skills can be put to good use in the country of origin. Certainly we would have no rational basis for saying the decision that overall policy trumps a "no objection" letter was somehow an abuse of discretion.

In Korvah's second application she claimed she would be subject to persecution, but the State Department determined that if she returned and had problems the cause would not be "race, religion, or political opinion." USIA accepted this evaluation as did INS. We know of no standard of review we could apply that would dictate a different result. INS cannot act without a favorable recommendation from USIA, a non-party to this litigation. Assuming even without deciding that the reasonableness of their denial is before us, we would conclude that their reliance on the report of the Bureau of Human Rights and Humanitarian Affairs of the State Department was reasonable and in no way arbitrary or capricious.

There is admittedly a split in the circuits on the jurisdictional issue presented here. Noting a split of authority, the district court followed the decision of four of the five circuits that have addressed the issue herein. Those four circuit court decisions have found that a district court lacks subject matter jurisdiction to review a USIA decision not to recommend waiver of said requirement and/or the INS decision not to waive the two-year foreign residency requirement.

In *Singh v. Moyer*, 867 F.2d 1035 (7th Cir.1989); *Slyper v. Attorney General*, 827 F.2d 821 (D.C.Cir.1987), *cert. denied*, 485 U.S. 941, 108 S.Ct. 1121, 99 L.Ed.2d 281 (1988); *Dina v. Attorney General*, 793 F.2d 473 (2d Cir.1986); and *Abdelhamid v. Ilchert*, 774 F.2d 1447 (9th Cir.1985), review of a § 1182(e) waiver decision was denied, premised on the holding that there was no "meaningful standard" against which to judge the agency's exercise of discretion. *Chong v. USIA*, 821 F.2d 171 (3d Cir.1987), is arguably to the contrary, although *Chong* was a suit against the USIA. We believe that the majority view is the better view, although we hasten to reiterate that no abuse of discretion would be apparent here were we to reach the merits.

Plaintiffs also rely on *Rafeedie v. INS*, 880 F.2d 506 (D.C.Cir.1989), in support of their argument that this decision of INS is subject to judicial review. We find *Rafeedie* distinguishable on a number of grounds. First, the waiver provisions of § 1182(e) are neither involved nor discussed in *Rafeedie*. Second, the earlier decision of the District of Columbia Circuit in *Slyper* is not even referenced, despite the fact that two of the judges sitting in *Rafeedie* also sat in *Slyper*. Finally, the decision in *Rafeedie* that summary exclusion proceedings involving a *permanent resident alien* are subject to judicial review involves facts, as well as a section of the statute, totally different from those with which we are involved here.

**AFFIRMED.**