Vareda MADISON–HUGHES; Tennessee Interfaith Coalition for Justice in Health Care, Plaintiffs–Appellants,

Amy Cato; Charlotte Collins; Treutland County Clients Council, Appellants,

v.

Donna E. SHALALA, Secretary, United States Department of Health and Human Services; United States Department of Health and Human Services; Dennis Hayashi, Director, Office of Civil Rights, United States Department of Health and Human Services, Defendants–Appellees.

No. 94–6626.

United States Court of Appeals, Sixth Circuit.

Argued Jan. 22, 1996.

Decided April 8, 1996

Gordon Bonnyman (argued and briefed), Nashville, TN, for Plaintiffs–Appellants.

William L. Deneke, Asst. U.S. Atty. (argued and briefed), Office of the U.S. Attorney, Nashville, TN, Louis Altarescu, Office of the General Counsel, Civil Rights Division, Washington, DC, for Defendants–Appellees.

Kenneth Kimerling, Puerto Rican Legal Defense & Education Fund, New York City, for Amicus Curiae Puerto Rican Legal Defense & Education Fund Inc.

Before CONTIE, NELSON, and BATCHELDER, Circuit Judges.

CONTIE, Circuit Judge.

Plaintiffs-appellants, and proposed intervenors, Amy Cato, Charlotte Collins, and Treutland County Clients Council, appeal the order of the district court dismissing this action against defendants for failure to comply with alleged mandatory federal regulations under Title VI because the court lacked subject matter jurisdiction.[1] For the following reasons, we affirm the order of the district court.

### I.

On January 19, 1993, the original plaintiffs, Vareda Madison–Hughes and the Tennessee Interfaith Coalition for Justice in Health Care, filed suit against defendants, the Department of Health and Human Services ("HHS"), the Secretary of HHS, Donna Shalala, and the Acting Director of HHS's Office of Civil Rights ("OCR").

Plaintiffs alleged that they were discriminated against by health care providers, who were recipients of HHS funds, in violation of Title VI, which prohibits recipients from discriminating on the grounds of race, color, or national origin.[2] Plaintiffs challenged the failure of HHS to comply with alleged mandatory federal regulations governing Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, which provide for HHS to collect data and information from recipients of federal assistance sufficient to permit effective enforcement of Title VI. Plaintiffs alleged that because defendants published no measures of the racial integration of health care providers, Title VI cannot be effectively enforced. Plaintiffs also alleged that HHS has not produced routine reports on the ethnic distribution of recipients by health care providers and does not require uniform race or ethnic data collection or reporting from health care providers. Accordingly, plaintiffs sought declaratory and injunctive relief to compel defendants to comply with Title VI and the implementing regulations and collect such data.

On March 22, 1993, defendants moved to dismiss the complaint for lack of subject matter jurisdiction. On June 4, 1993, plaintiffs filed a response and in concert with three potential intervenors, filed a "Motion For Leave to File Amended and Supplemental Complaint, and to Intervene." On August 26, 1994, the district court heard oral arguments on the motion to dismiss. On September 21, 1994, the district court granted defendants' motion to dismiss for lack of subject matter jurisdiction. The district court held that under § 701(a)(2) of the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.*, the court was without jurisdiction over the case because there were no meaningful standards in Title VI or the Title VI regulations by which to judge HHS's data collection. Having ruled that it lacked jurisdiction over the case, the court denied the motions to intervene and to supplement the complaint as moot. On October 19, 1994, plaintiffs and the applicants for intervention filed a timely notice of appeal.

### II.

■ A district court's decision to grant a motion to dismiss for lack of subject matter jurisdiction is reviewed *de novo*. *Ang v. Procter & Gamble Co.*, 932 F.2d 540, 544 (6th Cir.1991).

---

1. Plaintiffs' brief is supported on appeal by *amicus curiae*, The Puerto Rican Legal Defense and Education Fund.

2. However, the plaintiffs did not file a complaint pursuant to 45 C.F.R. § 80.7(b), the section which provides for the filing of such complaints to ensure HHS enforcement of Title VI violations.

Title VI states that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. It also authorizes federal agencies to issue and to enforce implementing regulations in order to effectuate § 2000d. 42 U.S.C. § 2000d–1. Compliance with any requirement of Title VI can be effected by (1) terminating federal assistance; or (2) by any other means authorized by law. *Id.*

The Attorney General is responsible for coordinating the compliance and enforcement of Title VI by federal agencies through the implementation of rules and regulations. Executive Order 11764, 41 Federal Register 52669 (December 1, 1976) and Executive Order 12250, 45 Federal Register 72995 (Nov. 2, 1980).

Pursuant to the Congressional and Presidential mandate, the Attorney General issued 28 C.F.R. Part 42, Subpart F. Subpart F serves "to insure that federal agencies which extend financial assistance properly enforce title VI ... and similar provisions in federal grant statutes." 28 C.F.R. § 42.401. The subpart further provides for enforcement of Title VI. HHS then acted to develop Title VI implementing regulations. 45 C.F.R. Part 80. These regulations, which provided for compliance with Title VI, were made applicable "to any program for which Federal financial assistance is authorized to be extended to a recipient under a law administered by [HHS] ...." 45 C.F.R. § 80.2. Because HHS is a federal agency which provides financial assistance through the Medicare and Medicaid programs, it must comply with Title VI.

■ The plaintiffs' suit, claiming HHS has failed to collect specified data mandated by Title VI, must be evaluated under the APA. Section 701 provides for judicial review of agency actions except "to the extent that (1) statutes preclude judicial review; or (2) agency action is committed to agency discretion by law." 5 U.S.C. § 701. If it is determined that either situation exists, then a court must decline to exercise jurisdiction over the matter. *Heckler v. Chaney,* 470 U.S. 821, 828, 105 S.Ct. 1649, 1654, 84 L.Ed.2d 714 (1985). If the matter is not precluded by review, then the court must analyze whether the agency's action was "arbitrary, capricious, [or] an abuse of discretion." 5 U.S.C. § 706(2)(A).

In *Chaney,* the Supreme Court has provided its most recent detailed analysis and formulation of 5 U.S.C. § 701(a)(2). The Court held that "even where Congress has not affirmatively precluded review, review is not to be had if the statute is drawn *so that a court would have no meaningful standard against which to judge the agency's exercise of discretion.*" 470 U.S. at 830, 105 S.Ct. at 1655 (emphasis added). In the present case, the dispositive issue is whether the statutory scheme of Title VI and its accompanying implementing regulations provide meaningful standards by which to judge the collection of data by HHS, or whether monitoring compliance in the form of data collection is committed to agency discretion by law, precluding review under 5 U.S.C. § 701(a)(2).

### III.

Plaintiffs contend that the court has subject matter jurisdiction under the APA, 5 U.S.C. §§ 701–706. Plaintiffs first rely upon section 706(1) as justification for the court's jurisdiction. This section provides for court intervention to "compel agency action unlawfully withheld...." Agency action is "unlawfully withheld" only when "the agency has violated its statutory mandate by failing to act." *Environmental Defense Fund, Inc. v. Costle,* 657 F.2d 275, 283 (D.C.Cir.1981). Plaintiffs' complaint is premised on the assumption that HHS has violated Title VI by failing to collect the following types of statistical data: routine reports on the ethnic distribution of recipients by health care providers, uniform race or ethnic data collection from health care providers, and measures of the racial integration of health care providers, which would be useful to them in their advocacy and research activities regarding discrimination by health care providers.

■ We find that the complaint should be dismissed under Fed.R.Civ.P. 12(b)(1) for

lack of subject matter jurisdiction, because jurisdiction depends upon the alleged existence of a mandatory legal requirement that HHS routinely collect such data, when, in fact, data collection is left to HHS's discretion, and no such legal requirement exists. First, we find no "statutory mandate" to collect data. Title VI's only substantive provision simply prohibits discrimination on the grounds of race, color, or national origin. 42 U.S.C. § 2000d. The language of the statute, thus, does not provide for mandatory collection of such racial data.

Just as there is no statutory mandate, there is no regulation promulgated under Title VI mandating that HHS collect the type of racial data which plaintiffs specify. Plaintiffs cite only two provisions in arguing that HHS has not fulfilled mandatory requirements by failing to collect this type of racial data. The first is 45 C.F.R. § 80.6. They contend that HHS has failed "to comply with mandatory federal regulations which require them to obtain compliance information from Medicare and Medicaid participating providers, 45 C.F.R. § 80.6."

■ Nothing in 45 C.F.R. § 80.6 requires HHS to obtain specific statistical data from Medicare and Medicaid providers or any other recipients of HHS funds. Section 80.6(b) discusses recipient reporting requirements.[3] However, the only requirement in § 80.6(b) is that recipients provide compliance reports "at such times, and in such form and containing such information, as the responsible Department official … *may* determine to be necessary…." 45 C.F.R. § 80.6(b) (emphasis added). Section 80.6(b) indicates that "racial and ethnic data" is an "example" of the type of information which recipients should have available to indicate the extent to which members of minority groups are beneficiaries and participants in federally assisted programs. Recipients are not required to provide reports until HHS

determines them to be necessary and prescribes their form and content. The data collection approach described by 45 C.F.R. § 80.6 involves HHS requests for data as HHS determines may be necessary to ascertain a recipient's compliance with Title VI. That information may vary based upon the type of investigation or review, the allegations of a particular complaint, and other individual circumstances. HHS's collection of racial data from recipients under this provision is, therefore, clearly discretionary and not mandatory.

We believe our interpretation of § 80.6(b) finds support in case law. The language of regulation § 80.6(b) is similar to that contained in a regulation made pursuant to the Hill–Burton Act, which was reviewed by this court in *Gillis v. U.S. Dept. of Health & Human Services,* 759 F.2d 565 (6th Cir.1985). The regulation at issue in *Gillis* stated:

> The Secretary shall investigate and ascertain, on a periodic basis, with respect to each entity which is receiving financial assistance …, the extent of compliance by such entity with the assurances required to be made at the time such assistance was received.

*Id.* at 573. This court found that the agency action at issue in *Gillis* was committed to agency discretion by law. *Id.* at 576. The appellant had argued that although an agency's duty to enforce was committed to agency discretion, its duty to monitor compliance was a non-discretionary duty. This court disagreed, stating:

> To the extent that such line drawing is possible, grouping certain of the agency's functions under the rubric of "monitoring" and others under "enforcement" is a distinction without a difference. The mechanism by and extent to which HHS "monitors" as well as "enforces" compliance fall squarely within the agency's exercise of discretion.

---

**3.** 45 C.F.R. § 80.6(b) provides in relevant part: Each recipient shall keep such records and submit to the responsible Department official or his designee timely, complete and accurate compliance reports at such times, and in such form and containing such information, as the responsible Department official or his designee may determine to be necessary to enable him

to ascertain whether the recipient has complied or is complying with this part. For example, recipients should have available for the Department racial and ethnic data showing the extent to which members of minority groups are beneficiaries of and participants in federally-assisted programs.

*Id.* This court found in *Gillis* that the appellant's claim against HHS's alleged inaction in enforcing compliance with Hill–Burton assurances was not a proper subject of judicial review under the APA. *Id.* In making this conclusion, this court relied on the Supreme Court's decision in *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines). Id.* The Supreme Court was faced with the question of whether the Federal Aviation Administration's spot-check system of monitoring manufacturers' compliance with minimum safety standards fell within the "discretionary function or duty exemption" from liability under the Federal Tort Claims Act. 467 U.S. 797, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984). The Supreme Court stated in *Empresa de Viacao* that the "FAA's implementation of a mechanism for compliance review is plainly a discretionary activity," *id.* at 819, 104 S.Ct. at 2767, because decisions as to the manner of enforcing regulations directly affect the feasibility and practicality of the government's regulatory program. The Supreme Court found that such decisions require "the agency to establish priorities for the accomplishment of its policy objectives by balancing the objectives sought to be obtained against such practical considerations as staffing and funding." *Id.* at 820, 104 S.Ct. at 2767.

We believe that similar concerns are at issue in the present case, and similar deference to administrative discretion is appropriate. Responsibility for monitoring and enforcing Title VI rests with the federal agencies that extend financial assistance. 28 C.F.R. § 42.401. Because HHS is charged with enforcing Title VI compliance, it has been granted the discretion to balance the factors involved in selecting the data it needs to carry out this responsibility. *See Frasier v. U.S. Dept. of Health and Human Services,* 779 F.Supp. 213, 219–20 (N.D.N.Y. 1991). Some of the complex factors involved in data collection include what types of data to collect, how often, and from whom to collect it. We do not agree with plaintiffs' reading of Title VI that even if enforcement is discretionary, monitoring in the form of data collection is mandatory. As this court stated in *Gillis,* monitoring is a form of enforcement. 759 F.2d at 573.

As the Supreme Court stated in *Heckler v. Chaney,* 470 U.S. at 831–32, 105 S.Ct. at 1655–56, enforcement decisions involve a complicated balancing of a number of factors which are peculiarly within the agency's expertise, and the agency is far better equipped than the courts to deal with the many variables involved in the proper ordering of its priorities. Although HHS is charged with enforcing the law that its federal funds not be used to assist entities which discriminate on the basis of race, color or nationality, the agency is given discretion in how best to monitor compliance. 45 C.F.R. § 80.6(b) does not mandate that HHS act as an information clearinghouse, collecting racial and ethnic data to provide statistics useful to plaintiffs. To the contrary, Title VI mandates that as one of the mechanisms to enforce the Act, HHS shall require recipients to submit compliance reports as the responsible Department official "may determine to be necessary to enable him to ascertain whether the recipient has complied or is complying with this part"—in other words, at the agency's discretion.

A plain reading of 45 C.F.R. § 80.6(b) indicates that as a mechanism of enforcing the Act, HHS must monitor the activity of recipients and shall *at times* require that recipients provide compliance reports with statistical data. Moreover, there is further qualifying language in subsection (a) of § 80.6, in which it is stated that the responsible Department official shall "to the fullest extent practicable" seek the cooperation of recipients in obtaining compliance. Based on the use of such qualifying phrases, we believe 45 C.F.R. § 80.6(b) commits the collection of data to agency discretion, rather than mandating specific requirements.

■ The second regulation on which plaintiffs rely is the Department of Justice ("DOJ") regulation related to the coordination of Title VI within the federal government. The only provision identified by plaintiffs to support their claim that the DOJ coordinating regulation mandates specific racial data collection by HHS is 28 C.F.R. § 42.406(a). Section 42.406(a) provides that:

federal agencies, as part of the guidelines required by [28 C.F.R.] § 42.404, shall ... provide for the collection of data and information from applicants for and recipients of federal financial assistance sufficient to permit effective enforcement of title VI.

Plaintiffs ignore 28 C.F.R. § 42.404(a), which specifies that the guidelines, under which the collection of data shall be provided for, are committed to agency discretion. Under 28 C.F.R. § 42.404(a), federal agencies are required to "publish title VI guidelines for each type of program to which they extend financial assistance, *where such guidelines would be appropriate to provide detailed information on the requirements of title VI*" (emphasis added).[4] When read in conjunction with § 42.404(a), § 42.406(a) does not mandate the collection of specific data, but instead addresses guidelines issued by a federal agency when that agency believes that "such guidelines would be appropriate." Because the regulation at § 42.406 is only operative if guidelines are issued, it cannot be deemed mandatory. Even as applied to discretionary agency guidelines, § 42.406(a) does not, by its terms, mandate that federal agencies routinely collect specific racial data. Rather, when guidelines are issued, it is up to the federal agency to determine what data collection is "sufficient to permit effective enforcement of title VI." This is consistent with the principle that "[r]esponsibility for enforcing title VI rests with the federal agencies which extend financial assistance." 28 C.F.R. § 42.401.

Plaintiffs have thus failed to identify any provision in either statute or the implementing regulations which mandates that HHS collect specific racial data, other than as HHS, in its discretion, determines is necessary to enforce Title VI. Because plaintiffs rely for jurisdiction upon the existence of a legal requirement that does not exist, we believe plaintiffs' first assignment of error lacks merit. *See Environmental Defense Fund, Inc. v. Costle,* 657 F.2d at 283. The district court is affirmed on this issue.

## IV.

 In addition, courts do not have subject matter jurisdiction to review agency actions that are "committed to agency discretion by law." 5 U.S.C. § 701(a)(2). *Lincoln v. Vigil,* 508 U.S. 182, 113 S.Ct. 2024, 124 L.Ed.2d 101 (1993). An agency action is committed to agency discretion by law if the statute does not provide a "meaningful standard against which to judge the agency's exercise of discretion." *Heckler v. Chaney,* 470 U.S. at 830, 105 S.Ct. at 1655; *United Liberty Life Ins. Co. v. Ryan,* 985 F.2d 1320, 1326 (6th Cir.1993). This court has held that judicial review is only available where there are "standards, definitions, or other grants of power [that] deny or require action in given situations...." *Diebold v. United States,* 947 F.2d 787, 795 (6th Cir.1991). A meaningful standard does not exist where the applicable law is so broadly drawn that the court has no standard or substantive priorities against which to measure an agency's discretion. *Community Action of Laramie County, Inc. v. Bowen,* 866 F.2d 347, 353 (10th Cir.1989).

 We find that in the present case the challenged HHS activities are also immune from APA review because Title VI regulations do not include standards for the court to determine the adequacy of HHS's data collection activities. If regulations do not provide guidance about specific legal standards for judicial review, agency action is immune from such review. *Slyper v. Attorney General,* 827 F.2d 821, 824 (D.C.Cir. 1987), *cert. denied,* 485 U.S. 941, 108 S.Ct. 1121, 99 L.Ed.2d 281 (1988); *Gillis,* 759 F.2d at 577; *Harris v. McLaughlin,* 732 F.Supp. 780, 783 (N.D.Ohio 1989).

---

4. Plaintiffs note in their reply brief that pursuant to 28 C.F.R. § 42.404(b), the agency must make a written, public determination that the section's requirements in regard to guidelines are inappropriate with regard to a particular program it administers. However, in their lawsuit, plaintiffs do not contend HHS has failed to provide such a determination in a specific instance. Although in such specific instances, it may be possible to allege that HHS has failed to act, plaintiffs have not designated such an instance. We do not find this court has jurisdiction to review the broad, sweeping generalizations made by plaintiffs in regard to HHS data collection. Nor do we find that the regulations mandate the type of data collection that they specify in their complaint.

HHS's Title VI regulation, 45 C.F.R. § 80.6(b), states that recipients must provide "timely, complete and accurate compliance reports" to HHS "at such times, and in such form and containing such information as responsible Department officials ... may determine to be necessary" to ascertain compliance with Title VI. This language does not provide a standard, but rather allows HHS to request and receive from recipients the particular type of information which HHS believes is necessary. Although compliance reports must be "timely, complete and accurate," these terms are not defined and there is no standard for judging adequate compliance. HHS has the discretion to determine its data needs as part of its complaint investigations, compliance reviews, monitoring of settlement agreements and voluntary compliance plans, and Medicare pre-grant and Hill–Burton reviews. HHS may require different types of racial data depending upon the type of review or investigation, the allegations of a particular complaint, and other individual circumstances.

Similarly, in 28 C.F.R. § 42.406(a), we believe the phrase "sufficient to permit effective enforcement of title VI" fails to offer specific guidance or a standard by which to measure data collection activity. Following this statement in § 42.406(a) is a list of examples in § 42.406(b), which "to the extent necessary and appropriate for determining compliance with title VI," should be required.[5] Section 42.406(b) refers to "relevant and current" information, but does not define these terms. There is no guidance for a court to use in evaluating an agency's decision regarding the information it may determine to be "relevant and current." Moreover, it is left to agency discretion to determine the extent to which it is necessary and appropriate to seek compliance information. *See Dubbs v. C.I.A.,* 769 F.Supp. 1113, 1120 (N.D.Cal.1990).

Courts have interpreted language similar to that found in 45 C.F.R. § 80.6 and 28 C.F.R. §§ 42.406(a), (b) and concluded that such language grants discretion to the agency and precludes judicial review. *See Webster v. Doe,* 486 U.S. 592, 600, 108 S.Ct. 2047, 2052, 100 L.Ed.2d 632 (1988) (the language "shall deem ... necessary or advisable" exudes deference to the agency and forecloses the application of any meaningful standard of review); *Haitian Refugee Center, Inc. v. Baker,* 953 F.2d 1498, 1507–08 (11th Cir.), *cert. denied,* 502 U.S. 1122, 112 S.Ct. 1245, 117 L.Ed.2d 477 (1992) (agency discretion to act "as [the president] deems necessary" is not constrained by requirements contained in executive order and agency guidelines); *State of N.D. ex rel. Bd. of University and School Lands v. Yeutter,* 914 F.2d 1031, 1035 (8th Cir.1990), *cert. denied,* 500 U.S. 952, 111 S.Ct. 2258, 114 L.Ed.2d 710 (1991) (statute that provides "if the Secretary determines" that certain conditions exist provides no meaningful standard and precludes judicial review); *Columbia–Greene Medical Center, Inc. v. Sullivan,* 758 F. Supp. 821, 823 (N.D.N.Y.1991) (Congress intended agency action to be unreviewable where statutory language allowed regulation "as the Secretary believes appropriate"). As the Supreme Court has stated, those charged with enforcing Title VI have discretion regarding the enforcement of the statute. *Guardians Ass'n v. Civil Service Com'n of New York,* 463 U.S. 582, 592, 103 S.Ct. 3221, 3227, 77 L.Ed.2d 866 (1983).

Because neither Title VI nor the Title VI regulations provide meaningful standards, criteria or priorities for a court to use in analyzing the sufficiency of HHS data collection activities, such data collection is left to the discretion of HHS and is not subject to judicial review. The cases on which plaintiffs rely for their argument that there are meaningful standards are not relevant or are distinguishable. In *Barlow v. Collins,* 397 U.S.

---

**5.** Section 42.406(b) reads in relevant part:

Pursuant to paragraph (a) of this section, in conjunction with the new applications for federal assistance ... and in any applications for approval of specific projects or significant changes in applications for continuation or renewal of assistance ..., and at other times as appropriate, federal agencies shall require applicants and recipients to provide relevant and current title VI information. Examples of data and information which, to the extent necessary and appropriate for determining compliance with title VI, should be required by agency guidelines are as follows....

159, 90 S.Ct. 832, 25 L.Ed.2d 192 (1970), the issue was whether judicial review was precluded by statute. In *Heckler v. Chaney,* 470 U.S. at 834–35, 105 S.Ct. at 1657–58, the Supreme Court subsequently clarified that 5 U.S.C. § 701(a)(2) forecloses judicial review where agency action is committed to agency discretion by law even if such review has not been expressly precluded by a separate statute. *See also Beno v. Shalala,* 30 F.3d 1057 (9th Cir.1994) (the statute directed that certain agency action (review of a state's request for a waiver) be based on a specific standard (waiver may only be granted if doing so would promote the objectives of the AFDC program, as set forth with specificity in 42 U.S.C. § 601)); *Mount Evans Co. v. Madigan,* 14 F.3d 1444 (10th Cir.1994) (specific requirement that settlement monies received first be used for improvements to damaged property provided a meaningful standard of review); *Briggs v. Sullivan,* 954 F.2d 534 (9th Cir.1992) (court had statutory standards prescribing the bases for agency action granting certification); *Board of Trustees of Knox County Hospital v. Sullivan,* 965 F.2d 558 (7th Cir.1992) (defendants concede phrase "special needs of regional and national referral centers" provides a standard that could be applied by reviewing court), *cert. denied,* 506 U.S. 1078, 113 S.Ct. 1043, 122 L.Ed.2d 353 (1993); *Abourezk v. Reagan,* 785 F.2d 1043 (D.C.Cir.1986) (Standards explicitly directing agency action in denying visas provided means of review), *aff'd,* 484 U.S. 1, 108 S.Ct. 252, 98 L.Ed.2d 1 (1987). There are no comparable standards in the present case describing what factors a court is to use in evaluating the data collection that occurs. Moreover, even if the Title VI regulatory data collection language cited by plaintiffs ("timely, complete and accurate," "sufficient," "relevant and current") were standards, there is nothing that defines the "given situations" in which data collection is required. *See Diebold v. United States,* 947 F.2d at 795.

We find that there is a distinction between a mandate for the collection of data as part of the process which HHS, at its discretion, shall use to enforce Title VI, and a mandate to collect nationwide statistics in order to determine how to enforce Title VI. We find that, contrary to what is implied by plaintiffs' arguments, Title VI does not mandate the latter. Pursuant to the regulations discussed, data collection is a means of ensuring compliance with Title VI, but the collection of specific data from specific recipients and the methodology of data collection is left to HHS's discretion.

The regulations implementing Title VI detail a broad array of general agency actions involved in enforcing Title VI. They range from obtaining assurances of nondiscrimination, 45 C.F.R. § 80.4, to conducting hearings to resolve discrimination, 45 C.F.R. § 80.9 and Part 81. They also detail the types of activities considered discriminatory. 45 C.F.R. § 80.3.[6] The regulations include procedures for investigating complaints of noncompliance, 45 C.F.R. § 80.7(c), and for reviewing the activities of programs, 45 C.F.R. § 80.6. These broadly drawn regulations do not establish any standards or substantive priorities to use in assessing HHS's collection of data for Title VI enforcement. In the absence of specific guidelines by which to judge the sufficiency of data collection, the courts must defer to the broad discretionary judgment granted to HHS in how best to implement Title VI.

■ Plaintiffs fail to see that Title VI does not impose on HHS a duty to provide the type of data collection which they allege in their complaint is lacking; it instead imposes a duty on HHS to ensure the compliance of each particular recipient of federal funds through a variety of means, one of which is data collection. Although Congress did not "set agencies free to disregard legislative direction in the statutory scheme," and Congress may circumscribe an agency's power to discriminate among issues or cases it will pursue, *Chaney,* 470 U.S. at 833, 105 S.Ct. at 1656–57, we do not find such a circumscription of HHS's powers after analyzing the statute and regulations at issue in

---

6. The specific discriminatory actions identified in the Title VI regulations at 45 C.F.R. § 80.3(b)(1)-(4) do not provide a meaningful standard by

which to judge HHS data collection as these provisions do not mention data collection.

the present case. Nor do we find any of the exceptions to the general rule of non-reviewability of an agency's enforcement decisions. As this court in *Gillis* stated, "The mechanism by and extent to which HHS 'monitors' as well as 'enforces' compliance fall squarely within the agency's exercise of discretion." 759 F.2d at 576. There are various stages in the Title VI process of enforcing and monitoring compliance under 45 C.F.R. §§ 80.4, 80.6–80.10 and Part 81. The administrative agency enforcing and monitoring compliance with Title VI may make decisions about data collection at any of these various stages. Because data collection decisions are inextricably tied to HHS's enforcement activities, they are committed to agency discretion by law. *See Heckler v. Chaney,* 470 U.S. at 835, 105 S.Ct. at 1657–58. As the Supreme Court stated in *Chaney,* the danger that agencies may not carry out their delegated powers with sufficient vigor does not necessarily lead to the conclusion that courts are the most appropriate body to police this aspect of their performance. *Id.* at 834, 105 S.Ct. at 1657. The decision in the first instance is for Congress, and in the present case, after turning to the applicable statute and regulations, we do not find that Congress has indicated an intent to circumscribe HHS's monitoring discretion or has provided meaningful standards for defining the limits of that discretion. *Id.* at 834–35, 105 S.Ct. at 1657–58.

Applicable Title VI law, thus, does not include express or substantive guidelines for HHS to follow when deciding what data to collect under what circumstances. As the Supreme Court in *Chaney* stated, the exercise of the discretionary powers of an agency are not subject to judicial review in the absence of clear guidelines. 470 U.S. at 834–35, 105 S.Ct. at 1657–58. Because Title VI does not provide express or substantive guidelines for HHS to follow in deciding what information to collect when enforcing the statute, there is no law for this court to apply. The APA provides that where an agency has this discretion, judicial review is unavailable. 5 U.S.C. § 701(a)(2). Therefore, in the present case, judicial review under the APA is not authorized. The district court is affirmed on this issue.

### V.

We must next decide whether the district court erred when resolving procedural issues regarding plaintiffs' argument that HHS collects insufficient data. Any factual findings made by the district court in resolving a motion to dismiss are reviewed under a clearly erroneous standard. *See Gafford v. General Electric Co.,* 997 F.2d 150, 161 (6th Cir.1993).

Plaintiffs argue on appeal that "the district court erred when it dismissed this action based on the unsupported factual assertions of the defendants, rather than treating as true the contrary factual allegations of the complaint." Plaintiffs allege that HHS failed to present any evidence to the district court that they did, in fact, collect data pursuant to Title VI. Plaintiffs claim that because this case involved a *facial* attack under Fed.R.Civ.P. 12(b)(1) (merely questioning the sufficiency of the pleading), the allegations in their complaint must be taken as true.

Plaintiffs fail to recognize the fundamental difference between a motion to dismiss for lack of subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1) and a motion to dismiss for failure to state a claim upon which relief can be granted under Fed. R.Civ.P. 12(b)(6), which this court recognized in *Rogers v. Stratton Industries, Inc.,* 798 F.2d 913, 915 (6th Cir.1986). When subject matter jurisdiction is challenged under Rule 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion. *Id.; Moir v. Greater Cleveland Regional Transit Authority,* 895 F.2d 266, 269 (6th Cir.1990). In addition, the district court is empowered to resolve factual disputes when necessary to resolve challenges to subject matter jurisdiction. *United States v. Ritchie,* 15 F.3d 592, 598 (6th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 188, 130 L.Ed.2d 121 (1994).

Moreover, in the present case, plaintiffs' complaint does not allege that HHS collects no data whatsoever, as plaintiffs now contend on appeal. Plaintiffs' complaint states: (1) "[HHS] collects and publishes aggregate data on white and nonwhite health status and use

of health resources;" (2) that the "[HHS] ha[s] maintained a nationwide Professional Review Organization which has resulted in some collection of data;" and (3) that HHS collects racial data every three years from facilities which received construction subsidies under the former Hill–Burton Act. Although plaintiffs allege, for the first time on appeal, that HHS has completely abdicated its duty to monitor noncompliance and collect data sufficient to ensure enforcement of Title VI, these statements in the complaint make it clear that plaintiffs are complaining about the level of enforcement and monitoring by the agency. See *Gillis*, 759 F.2d at 578. There is nothing whatsoever in the pleadings or record to support the assertion that HHS has totally abdicated its statutory responsibility.

For these reasons, the district court is affirmed on this issue.

## VI.

Finally, we must decide whether the district court erred by denying the motion to intervene and plaintiffs' motion to amend and supplement the original complaint.

Plaintiffs state that "the district court's denial of the motion to intervene and amend and supplement the complaint was based on the court's ruling that it lacked subject matter jurisdiction, and the motion was therefore moot." They then state that "since the jurisdictional finding was ... erroneous, so too was the denial of the plaintiffs' motion."

We disagree. Because the district court properly dismissed the case for lack of subject matter jurisdiction, it also acted properly in dismissing these motions as moot.

## VII.

To conclude, we find that subject matter jurisdiction is not established in the present case under Title VI, the regulations promulgated thereunder, or the APA. The district court is hereby **AFFIRMED.**