CARE CHOICES HMO, Plaintiff(s),

v.

Elizabeth ENGSTROM, Defendant(s).

No. 01–71792.

United States District Court,
E.D. Michigan,
Southern Division.

Nov. 6, 2001.

Thaddeus E. Morgan, Fraser, Trebilcock, Lansing, MI, for Care Choices HMO, plaintiffs.

Charles Gottlieb, Gottlieb & Goren, Bingham Farms, MI, for Elizabeth Engstrom, defendants.

***OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR DISMISSAL, DENYING DEFENDANT'S MOTION FOR SANCTIONS, AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT***

ROBERTS, District Judge.

### I. *Introduction*

This matter is before the Court on Defendant Elizabeth Engstrom's Motion for

Dismissal or For Summary Judgment, and Motion for Sanctions, and on Plaintiff Care Choices HMO's Motion for Summary Judgment. The Motions raise a number of issues, but the Court's resolution of one renders most of the remaining moot: for the reasons stated below, the Court holds that it does not have subject matter jurisdiction over this case. Consequently, the Court will grant Defendant's Motion for Dismissal. The remaining Motion—Defendant's Motion for Sanctions—will be denied.

## II. *Background*

According to Plaintiff's Complaint, it is a health management organization ("HMO") that is federally licensed to provide replacement Medicare. Defendant was covered by Plaintiff's HMO plan when she injured herself at a grocery store on October 19, 1999. Defendant's subsequent lawsuit against the grocery store owner resulted in a $100,000 settlement and the action was dismissed by stipulation on February 15, 2001.

In this action, Plaintiff seeks to recover from the settlement proceeds the amount it paid for Defendant's care arising out of her October 1999 injuries. Plaintiff alleged that the total amount it was owed as of May 3, 2001, the date it filed the Complaint, was $56,745.19. Defendant counters that Plaintiff should be denied relief because, *inter alia*, there is no federal question jurisdiction. The Court agrees with Defendant.

## III. *Analysis*

### A.

■ Defendant's Motion for Dismissal is filed pursuant to Fed.R.Civ.P. 12(b)(1). "When subject matter jurisdiction is challenged under Rule 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion." *Madison-*

*Hughes v. Shalala*, 80 F.3d 1121, 1130 (6th Cir.1996). As opposed to a factual attack, Defendant is making a facial attack on this Court's subject matter jurisdiction. "A *facial* attack on the subject matter jurisdiction alleged by the complaint merely questions the sufficiency of the pleading." *Ohio Nat. Life Ins. Co. v. U.S.*, 922 F.2d 320, 325 (6th Cir.1990)(emphasis in original). Under these circumstances, the Court must accept the allegations in Plaintiff's Complaint as true. *Id.*

### B.

■ Plaintiff alleges in its Complaint that jurisdiction in this Court is proper because this action involves a federal question. (*Complaint* at ¶ 4). Specifically, Plaintiff states:

Since the benefits paid by Care Choices HMO as a result of the injuries giving rise to Defendant's lawsuit substituted for Medicare benefits, Defendant is obligated to reimburse the plan pursuant to federal law. 42 U.S.C. § 1395 et. seq.; 42 C.F.R. § 417.528.

(*Complaint* at ¶ 14).

Plaintiff's representation regarding the statutory and regulatory law cited is not quite accurate. 42 U.S.C. § 1395mm(e)(4) does not by its terms "obligate" Defendant to reimburse Plaintiff. Rather, that section gives HMOs the option to seek reimbursement from their members under certain circumstances:

(4) Notwithstanding any other provision of law, the eligible organization *may* (in the case of the provision of services to a member enrolled under this section for an illness or injury for which the member is entitled to benefits under a workmen's compensation law or plan of the United States or a State, under an automobile or liability insurance policy or plan, including a self–insured plan, or

under no fault insurance) charge or authorize the provider of such services to charge, in accordance with the charges allowed under such law or policy—

(A) the insurance carrier, employer, or other entity which under such law, plan, or policy is to pay for the provision of such services, or

(B) such member to the extent that the member has been paid under such law, plan, or policy for such services.

§ 1395mm(e)(4)(emphasis added). The regulatory counterpart, § 417.528(b), uses similar permissive language.

Thus, what is at issue here is whether § 1395mm(e)(4) created a federal cause of action for Plaintiff to enforce its right to charge Defendant for the amounts it paid as a result of the October 1999 accident. The Court holds that it does not.

### C.

■ In *Cort v. Ash*, 422 U.S. 66, 78, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), the Court delineated four factors to consider when determining whether a private remedy is implicit in a statute:

First, is the plaintiff one of the class for whose especial benefit the statute was enacted, that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?

(Citations and quotation marks omitted).

Each of the four *Cort* factors continues to be considered relevant in determining whether a federal statute creates a cause of action. *See, e.g., American Federation of State, County and Mun. Employees Local 506 v. Private Industry Council of Trumbull County*, 942 F.2d 376, 378 (6th Cir.1991). However, "[t]he central inquiry remains whether Congress intended to create, either expressly or by implication, a private cause of action." *Touche Ross & Co. v. Redington*, 442 U.S. 560, 575, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979). The first three factors are most relevant to that inquiry. *Id.* at 575–576, 99 S.Ct. 2479.

With respect to the first *Cort* factor, the Supreme Court has emphasized, "The question is not simply who would benefit from the Act, but whether Congress intended to confer federal rights upon those beneficiaries." *California v. Sierra Club*, 451 U.S. 287, 294, 101 S.Ct. 1775, 68 L.Ed.2d 101 (1981). And, in the face of congressional silence on its intent, courts must tread carefully. "[I]mplying a private right of action on the basis of congressional silence is a hazardous enterprise." *Touche Ross* at 571, 99 S.Ct. 2479.

### D.

After considering the text of § 1395mm and its legislative history, the Court finds that the first three factors weigh decidedly against a finding that § 1395mm implicitly created a cause of action for Plaintiff's benefit. Plaintiff is not of the class for whose special benefit the statute was enacted; there is no indication in the legislative history that Congress intended to create a federal remedy for HMOs such as Plaintiff; and, implying such a federal remedy would not be consistent with the underlying purposes of the legislative scheme.

The subsection that Plaintiff relies upon— § 1395mm(e)(4)—is a minute part of an extensive statute allowing HMOs and

competitive medical plans ("CMPs") to enter into contracts with the Secretary of Health and Human Services to provide Medicare services. Much of that statute, including subsection (e)(4), was enacted as part of the Tax Equity and Fiscal Responsibility Act of 1982, Pub.L. No. 97–248. That statute was not enacted for the benefit of HMOs or CMPs. Rather, Pub.L. No. 97–248 states that it is "[a]n Act to provide for tax equity and fiscal responsibility, and for other purposes." The Act was prompted by "a very serious deficit problem." 128 Cong. Rec. 6555; 1982 U.S.C.C.A.N. 1486, 1486 (1982)(statement of the Hon. Dan Rostenkowski, Chairman of the House Committee on Ways and Means). The drafters of the Act attempted to address the deficit problem but, at the same time, "manage[ ] to protect the vast majority of individual taxpayers and those now receiving federal assistance." *Id.*

More specifically to the issue at hand, the congressional record indicates that the portion of the Act relating to HMOs was intended to be a cost effective measure. One of the improvements to Medicare cited was: "An alternative payment system would be established to encourage health maintenance organizations (HMO's) which have a proven record of reducing medical costs." *Id.* at 1487.

That § 1395mm is primarily a fiscal statute is further evidenced by its text. The statute states that it pertains to "payments to health maintenance organizations and competitive medical plans." And, except for subsection (e), the payments outlined in § 1395mm are those to be made from the Secretary to eligible HMOs and CMPs. § 1395mm(a).

Section 1395mm also reveals itself to be regulatory in that it specifies requirements for becoming an eligible organization and for maintaining that status. Much of those requirements are for the benefit of Medicare enrollees. For instance, § 1395mm sets enrollment requirements, limits the manner in which eligible organization may expel members, specifies communications that an eligible organization must make to its membership and the health care services the organization must provide, and requires eligible organizations to provide meaningful grievance procedures. § 1395mm(c). Under some circumstances, dissatisfied enrollees are entitled to a hearing before the Secretary. *Id.* Additionally, § 1395mm delineates transgressions on the part of eligible organizations that would allow the Secretary to assess civil money penalties, to suspend payments and the like. § 1395(i)(6)(A) and (i)(6)(B). The delineated transgressions include failing to provide medically necessary items and services, imposing excessive premiums or acting to discourage or deny enrollment by eligible individuals. § 1395mm(i)(6)(A). These regulatory measures further the interest of protecting Medicare beneficiaries—an interest Congressman Rostenkowski referred to when the Act was being considered. 1982 U.S .C.C.A.N. at 1486.

In short, § 1395mm was clearly not enacted for the special benefit of HMOs and the legislative history does not reveal any Congressional intent to create a cause of action in favor of those organizations. To the contrary, § 1395mm was designed in part to protect the Medicare beneficiaries by requiring eligible organizations to establish grievance procedures, entitling some dissatisfied enrollees to hearings before the Secretary and authorizing the Secretary to penalize HMOs for failing to properly service enrollees. Further, in view of the explicit remedies outlined in § 1395mm, it would be inconsistent with the legislative scheme to imply a remedy that is not specified. *See Touche Ross* at 571–572, 99 S.Ct. 2479, (finding it relevant that Congress did not explicitly grant a

private cause of action in a statute when other related statutes explicitly included such causes of action.).

### E.

In its brief, Plaintiff states that § 1395mm(e)(4) was enacted as part of the Medicare Secondary Payer program. That representation is not true. As previously noted, § 1395mm(e)(4) was enacted as part of the Tax Equity and Fiscal Responsibility Act of 1982, Pub.L. No. 97–248. Furthermore, instead of supporting Plaintiff's argument, the Medicare Secondary Payer legislation highlights the omissions of § 1395mm(e)(4) to obligate reimbursement and to explicitly provide for a right of action.

42 U.S.C. § 1395y(b)(2) pertains to Medicare as a second payer. Under circumstances described in the statute, § 1395y(b)(2) deems group health, workers compensation, automobile and/or liability insurance plans to be primary. Unlike in § 1395mm(e)(4), where the HMO has the option to seek recoupment, repayment to the Government is required under § 1395y(b)(2)(B)(i). If repayment is not made within 60 days, interest may be assessed against the primary plan. *Id.* In addition, § 1395y(b)(2)(B)(ii) authorizes the United States to sue when repayment is not timely made:

> *In order to recover payment* under this subchapter for such an item or service, *the United States may bring an action* against any entity which is required or responsible (directly, as a third-party administrator, or otherwise) to make payment with respect to such item or service (or any portion thereof) under a primary plan . . . .

(Emphasis added). This type of explicit language is altogether missing from § 1395mm(e)(4).

Implicitly, therefore, Congress did not intend to empower HMOs with the same rights of action as were given the Government to recover reimbursement from primary providers.

### F.

Plaintiff cites *Humana Medical Plan, Inc. v. Valdez*, 25 F.Supp.2d 1347 (M.D.Fla.1997), as supporting its claim that this Court has jurisdiction over this action. In *Humana*, the court held that the plaintiff HMO's ability to seek recoupment from a wrongful death settlement was governed by § 1395mm(e)(4) rather than a Florida statute. While not disagreeing with that holding, this Court believes that the *Humana* court failed to preliminarily address the question of whether § 1395mm(e)(4) provided the court with federal question jurisdiction. The *Humana* court did not apply the *Cort* analysis or otherwise explain its implicit belief that § 1395mm(e)(4) created a federal cause of action. Consequently, this Court finds Plaintiff's reliance upon *Humana* unavailing.

\* \* \* \* \* \*

For the foregoing reasons, the Court holds that it does not have subject matter jurisdiction over Plaintiff's Complaint.

### G.

The Court must finally address Defendant's Motion for Sanctions. Defendant did not make its Motion for Sanctions separately from other motions, and did not serve Defendant with the Motion 21 days before filing it with the Court. Consequently, Defendant's Motion for Sanctions does not comply with Fed.R.Civ.P. 11(c)(1)(A), and will be denied.

### IV. *Conclusion*

For the reasons stated above, **THE COURT HEREBY GRANTS** Defendant's

Motion for Dismissal [**document 7–1**] because the Court lacks subject matter jurisdiction; **DENIES** Plaintiff's Motion for Summary Judgment [**document 8–1**], and **DENIES** Defendant's Motion for Sanctions [**document 7–3**].

### *JUDGMENT*

In accordance with the Order entered on NOV 06 2001 IT IS ORDERED that Judgment is entered in favor of Defendants.